## CITY OF NORTH PLATTE v. NORTH PLATTE WATER-WORKS COMPANY.

FILED OCTOBER 20, 1898.   No. 10057.

1. **Municipal Corporations: WATER-WORKS: CONTRACTS: VALIDITY OF ORDINANCE: PARLIAMENTARY LAW.** The provisions of subdivision 15 of section 69, chapter 14, article 1, Compiled Statutes, empowering cities of the second class of less than 5,000 inhabitants to pass ordinances whereby such cities may make contracts with and authorize any person, company, or corporation to erect and maintain a system of water-works and water supply for a term of twenty-five years, and to furnish water to such cities, *held* to fall within the exception contained in section 89 of said chapter, and, consequently, that an ordinance of that nature duly passed is valid, though not preceded by an appropriation to meet its requirements of payments of water rentals.

2. ———: ———: ———: ———. Where an ordinance authorizing the erection of water-works and the supply of water through hydrants of a certain number and at certain rentals was otherwise duly passed, *held*, that a suspension of the rule requiring it to be read only once on each of three different days unless this rule was suspended, was sufficiently complied with, where there were present four councilmen, all of whom voted for the suspension; the entire council consisting of six members, of whom one had resigned and another was absent when the suspension took place.

ERROR from the district court of Lincoln county. Tried below before NORRIS, J. *Affirmed.*

See opinion for references to cases.

*A. F. Parsons* and *William Neville,* for plaintiff in error.

*Marston & Marston* and *Wilcox & Halligan, contra.*

RYAN, C.

In this case there has already been filed an opinion. (See *North Platte Water-Works Co. v. City of North Platte,* 50 Neb. 853.) When the cause was remanded there was filed an amended petition, and thereupon issues having been made up, there was a judgment in favor of the water-works company for $11,057.90, and the city, by proceedings in error, seeks a reversal of this judgment.

It was alleged in the amended petition that by assignment the water-works company became entitled to the right to perform the conditions required to be performed by its assignor and to compensation therefor; that it had performed these conditions by putting in certain hydrants through which water was furnished the city after the year 1887, and by a supplemental petition this performance was alleged to have been until January 1, 1898, and the prayer was for a balance in the aggregate of $11,057.90. In the opinion in this case above referred to there was a full statement of the items making up the sum claimed, except as described in the supplemental petition, whereby was added a claim for $6,822.47, which, as plaintiff alleged, had fallen due since the first petition was filed. By a stipulation it was admitted that the payments pleaded in the answer were therein correctly set forth. Without going into details it must suffice to say that these payments were made in the years 1889, 1890, 1891, 1892, 1893, 1894, 1895, 1896, and 1897, and in the aggregate amounted to $18,406.22. We are not advised by the petitions why there were no averments showing for what particular years the hydrant rentals had not been paid; neither is this made clear by the stipulation, for its recitations on this subject were simply of the amounts paid in each of the years above enumerated.

The ordinance by which the city of North Platte authorized to be furnished the hydrants and the water through said hydrants at a stipulated rental was adopted July 14, 1887, and was known as ordinance No. 62. It

was stipulated that the water-works company had put in forty-five hydrants, through which it had furnished water from November, 1888, and six additional hydrants, through which water had been furnished from January 1, 1890. It was further stipulated that in the estimate for the years 1886 and 1887 made by the city council no item for water supply or hydrant rentals was included and that no annual appropriation ordinance was passed therefor by said city council in the year 1887. It was also stipulated that there was levied and collected on the assessments of 1886 and 1887 for water purposes the sum of $4,325.80, and that between February 21, 1887, and March 18, 1890, there was paid out by said city $1,905.30 upon warrants drawn against the water fund of said city for purposes other than hydrant rentals, and that no proposition to construct water-works or furnish water supply, nor to appropriate money or levy a tax therefor, was ever submitted to a vote of the legal voters of said city. In the stipulation there was a recitation that under the terms of the contract sued on there remains unpaid the hydrant rental due January 1, 1898, as claimed by plaintiff. It will thus be seen that the hydrant rentals are claimed covering a period of eleven years, though the contest seems to be over the rentals which accrued in two of those years, that is to say, 1886 and 1887. As to the first of these it was expressly stipulated that no estimate or appropriation was ever made by the city council to meet it, and as to the second the stipulation in this respect is silent. In this regard, however, it corresponds with the supplemental petition by which the amount of $6,822.47 was claimed, for there is therein no averment of either an estimate or appropriation by the city council. As it is not claimed in argument that there had ever been such an estimate made or a special appropriation ordinance passed, we shall treat that branch of the case as it has been treated by counsel for the parties litigant. Under these conditions we have presented the question whether or not the city was lia-

ble by reason of the provisions of the ordinance passed July 14, 1887, in the absence of a special appropriation ordinance to meet the hydrant rentals which accrued in 1888 and at some time preceding January 1, 1898.

Plaintiff in error relies upon the inhibitions embodied in section 89, chapter 14, article 1, Compiled Statutes. This section is in this language: "No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as hereinafter expressly provided." To sustain its contention of the applicability of the above section to the facts of the case at bar plaintiff in error cites *City of Blair v. Lantry*, 21 Neb. 247; *McElhinney v. City of Superior*, 32 Neb. 744; *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla*, 40 Neb. 775.

In *City of Blair v. Lantry*, *supra*, the warrant was drawn for the payment of the purchase price of land to be used for an addition to a cemetery, and it was held invalid for the reason that no appropriation had been made to meet the expense of such purchase.

In *McElhinney v. City of Superior*, *supra*, there was an ordinance passed in November, 1889, by the provisions of which Robert Guthrie was given permission and authority to construct and operate an electric light plant and power in the city of Superior and, for those purposes, granting him the right to use the thoroughfares and public grounds of the city. Afterwards in the same month there was passed another ordinance, by which the city contracted with Robert Guthrie to pay him $924 per year for the period of three years for eleven electric lights to be furnished, maintained, and operated by him at such points in the city as its council should designate. The suit was brought by McElhinney, a resident and tax-

payer of the city, against the city council and Robert Guthrie to enjoin said Robert Guthrie from constructing said electric light plant or doing any work under the franchise granted by the ordinance first above referred to and to enjoin him from furnishing for the use of the city any electric lights and to enjoin the council from paying therefor. It was held that the contract for furnishing the electric lights was void, because no appropriation had been made for the expenditure proposed. The contract held void seems to have been entered into under a misapprehension of the provisions of chapter 19, Laws of 1889, which had been approved March 30 of the year just named. That chapter gave cities of the second class the right to construct and operate a system of electric lights, but did not confer upon such cities the power to employ individuals to operate such a system of lighting; therefore, at the time the ordinance was adopted whereby contracts were made with Robert Guthrie, subdivision 14, section 69, article 1, chapter 14, Compiled Statutes, did not confer authority upon cities of the class of North Platte to make contracts for lighting such cities by the use of electricity; hence the case of *McElhinney v. City of Superior, supra,* though correctly decided in view of the existing condition of the statutes of the state, affords no precedent for our guidance in this case, as we hope to make clear in the further progress of this discussion.

In *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla, supra,* the contract was for the purchase of certain fire apparatus. In these three cases the general rule laid down in *City of Blair v. Lantry* was applicable, for in each there was an attempt to enforce a contract in violation of section 89, chapter 14, article 1, Compiled Statutes. In the section just referred to there is, however, an exception, within which the contracts contemplated in the three cases just reviewed were not embraced, and that exception was, in effect, that an appropriation was not necessary in cases in the statute otherwise expressly pro-

vided. By subdivision 15, section 69, of the chapter just referred to it is provided that cities of the class in which North Platte is embraced may enact ordinances, among other things: "To make contracts with and authorize any person, company, or corporation to erect and maintain a system of water-works and water supply, and to give such contractors the exclusive privilege, for a term not exceeding twenty-five (25) years, to lay down in the streets and alleys of said city water mains and supply pipes, and to furnish water to such city * * * and the residents thereof and under such regulations as to price, supply, rent of water meters as the council * * * may from time to time prescribe by ordinance, for the protection of the city." The power to contract with individuals or corporations for a supply of water to be furnished for the use of the city for a term not exceeding twenty-five years implies the power to provide that payments shall be made as the right to receive them accrues, without an appropriation having been previously made with reference to the several payments as they shall mature. This is evident from the language of section 86 of said chapter, which is as follows: "The city council of cities and boards of trustees of villages shall, within the first quarter of each fiscal year, pass an ordinance to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year; and in such ordinance shall specify the objects and purposes for which appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them, or at a general or special election duly called therefor, and all

appropriations shall end with the fiscal year for which they were made." In effect, this section requires an annual appropriation for expenses which may be incurred during the current year, and if within that year the appropriation is not exhausted, the portion not used becomes unavailing. Clearly, therefore, such an appropriation could not be made to cover the sums to fall due for a period of perhaps twenty-five years. To hold that the city could not contract for water or hydrant rentals without an antecedent appropriation to defray the sums to fall due would effectually prevent the making of contracts in advance for furnishing water for any period of years. We are therefore of the opinion that in the case at bar it was not necessary to show an appropriation to have been made as a condition precedent indispensable to a right of recovery of judgment against the city.

It was stipulated that the city of North Platte was a city of the second class of less than 5,000 inhabitants; that it was divided into three wards, each of which was entitled to two councilmen; that in April, 1897, P. Walsh, Matt Hook, James Snyder, and W. J. Roche were elected councilmen of said city and M. Oberst and E. Blankenburg held over; that about June 20, 1897, Matt Hook resigned and the vacancy caused by his resignation was filled by appointment about August 1, 1897. In the progress of the consideration of the ordinance under which the water-works asserts its right to compensation the rules were suspended upon the affirmative vote of four members of the council, being all who were present at the time of such suspension, and under such circumstances and upon a like vote the ordinance was finally adopted. It is insisted by plaintiff in error that the ordinance is not binding upon the city, for the reason that in the suspension of the rule above noted there were but four affirmative votes, which constituted but two-thirds of the council. Under the provisions of section 79, chapter 14, Compiled Statutes, ordinances of a general or permanent nature must be fully and distinctly read on three

different days, unless three-fourths of the council shall dispense with the rule. The ordinance was passed by a majority of the entire membership of the council, composed of six members, so that the proposition now urged does not involve the sufficiency of the final vote. The sufficiency of the vote for suspension of the rules by the four members of the council who were present when the rule was suspended is the sole question presented in the attempt to show that the ordinance in question is not binding upon the city, and this question we shall now consider in the light of adjudicated cases.

In *Zeiler v. Central R. Co.*, 84 Md. 304, these were the facts: An ordinance of the mayor and city council of Baltimore authorized the defendant to lay railway tracks upon certain streets. Plaintiff filed a bill for an injunction to restrain the construction of the same, alleging that certain rules of procedure of the two branches of the city council had been violated in the passage of the ordinance, and that it was consequently void. The rules is question were substantially as follows: Rule 9. Every ordinance shall have two readings on two separate days, unless two-thirds of the members of the branch shall by vote otherwise direct. Rule 15. Any standing rule may be suspended upon the assent of three-fourths of the members present, except rule 9. An ordinance was passed under the suspension of the rules, which was ordered by the affirmative vote of fourteen members, which was two-thirds of the members present, but not two-thirds of the entire body. It was held that under rule 9 a vote of two-thirds of the members of the branch present and voting not being less than a majority, was sufficient, and that a vote of two-thirds of all the members of the branch was not necessary. The rule of construction enforced was that when a rule of the council provided that a vote of two-thirds of the members of a branch shall be necessary in certain cases, this means two-thirds of the members present and voting and constituting a quorum, and not two-thirds of all the members

elected. In the course of the delivery of the opinion of the court Page, J., said: "The question now before us must be determined by the proper meaning to be placed upon the words 'members of the branch' as used in the ninth rule. It is now well settled that in all cases a majority of a legislative body is a quorum entitled to act for the whole body, except where the power that creates it has otherwise directed. In *United States v. Ballin*, 144 U. S. 1, the court said: 'Where a quorum is present, the act of the majority of the quorum is the act of the body. This has been the rule for all time, except so far as in any given case the terms of the organic act under which the body is assembled have prescribed specific limitations.' There is no act of the state of Maryland that prescribes what number shall constitute a quorum of either of the two branches of the city council. That is determined by the common law, which fixes the 'majority as the legal body,' and under the authority granted by the legislature to 'settle their rules of procedure' there exists no power in either branch, or both, to fix a greater number. (*Heiskell v. Mayor and City Council*, 65 Md. 152.) In that case the court defined a quorum to be 'that number of the body which, when assembled in their proper place, will enable them to transact their proper business; or in other words, that number that makes a lawful body and gives them power to pass a law or ordinance.' It would therefore seem to follow from this that when a 'branch' or 'the members of a branch' are the words used, with nothing to qualify them, and in the absence of a clear intent to the contrary, they must be taken to mean that 'number of the body that makes a lawful body.' To construe the words 'two-thirds of the members of the branch,' as used in the ninth rule, to mean two-thirds of all the members would be to fix a meaning upon them that would deprive the majority of their legal power to act. It would amount to declaring that a majority, constituting the lawful body, intended by a rule of procedure to take away from itself, under certain circum-

stances, the power it rightfully has to do the work it was assembled to do. We think, therefore, it would be anomalous to hold that while a majority is competent to do business, a rule made under a power to settle the 'mode and manner' of conducting the business should be construed in such a manner as to take away from it the power to do business at all, under certain circumstances. 'Two-thirds of the members of the branch,' we are of opinion, means two-thirds of the members voting, not being less than a majority; and not two-thirds of all the members. This view is fully sustained by authority." To sustain the view above expressed there was cited *State v. McBride*, 4 Mo. 308, in which it was held that the requirement of "two-thirds of each house" contemplated the most common meaning of that expression, which is two-thirds of those constituting a quorum to do business. With the same view there was cited *Southworth v. Palmyra & J. R. Co.*, 2 Mich. 287, in which it was held that the requirement of two-thirds of each house contemplated two-thirds of the members present and doing business being a quorum. To the same effect was *Green v. Weller*, 32 Miss. 700. There was also cited *Morton v. Comptroller General*, 4 S. Car. 463, in which was considered the force of a constitutional provision that no law creating a debt should take effect until it had been passed "by a vote of two-thirds of the members of each branch of the general assembly," and in which, after stating that the constitution required the quorum to be a majority, the court said: "It [a quorum] is indeed for all legal purposes as much the body to which it appertains as if all the component parts were present. When, therefore, either branch of the general assembly is spoken of, in the absence of a clear intent to the contrary, the quorum of such body must be understood as intended. It would follow that provisions ascertaining the mode in which the body should divide, in order to complete action in any given case, whether by a mere majority or by a still greater proportion, must be inter-

preted primarily as applicable to the body as legally organized at the time such action is taken. If the rule is the mere majority rule, a majority of the quorum present and acting is intended; if the rule is that of two-thirds, then two-thirds of such quorum must concur for such effective action."

In *Atkins v. Philips*, 8 So. Rep. [Fla.] 429, the second paragraph of the syllabus correctly summarizes one proposition decided, in this language: "Where a municipal charter act provides that a majority of the members of the council shall be required to form a quorum for the transaction of business, and a rule of proceeding adopted by the council prescribes that a proposed ordinance may be passed on its first reading by a majority vote of the members present and then placed on a second reading by a like vote, and, if passed on its second reading, may then be read as passed as a whole on such second reading, but no ordinance shall be put on its third reading at the same meeting at which it is read the first time except by unanimous consent of the council, the term 'unanimous consent of the council' means all the members who may be present at the time the action as to putting the ordinance on its third reading is taken, whether a bare quorum or more. It does not require that every member of the council shall be present and consent."

Plaintiff in error, to meet the above cases, relies upon *Downing v. Rugar*, 21 Wend. [N. Y.] 178, *Lee v. Parry*, 4 Den. [N. Y.] 125, *Powell v. Tuttle*, 3 N. Y. 396, *People v. Supervisors Chenango County*, 11 N. Y. 563, *Fuller v. Gould*, 20 Vt. 643, *Schenk v. Peay*, 1 Dill. [U. S.] 267, and *Williamsburg v. Lord*, 51 Me. 599. These cases we have examined, and find that where they are in point they fall within this language used in *Downing v. Rugar, supra:* "The rule seems to be well established, that in the exercise of a public as well as private authority, whether it be ministerial or judicial, all the persons to whom it is committed must confer and act together, unless there

be a provision that a less number may proceed." It was accordingly held that where overseers of the poor were clothed with authority to institute certain proceedings such proceedings could not be commenced by a portion of such overseers.

In *Lee v. Parry, supra,* it was held that a portion of the trustees authorized to apportion a school tax could not act.

In *Powell v. Tuttle, supra,* it was held that where an act required two commissioners to conduct a sale of mortgaged lands a sale by one of them was invalid.

In *People v. Supervisors Chenango County, supra,* it was held that one assessor could not make a valid assessment, but that it must be made by all the assessors, or at least, by a majority of them upon a meeting of all.

In *Fuller v. Gould, supra,* an assessment had been made by assessors, one of whom afterwards entered upon the list a minute that the assessment was vacated. It was held that the listers could treat this entry as an error and restore the assessment as it originally had stood.

The part of the opinion relied on in *Schenk v. Peay, supra,* referred to the force of a curative statute, and it was held that its provisions must be strictly construed.

The paragraph of the syllabus in *Williamsburg v. Lord, supra,* which is a reflex of the portion of the opinion relied upon herein, is as follows: "By law, the board of assessors cannot consist of less than three persons, who shall be qualified by taking the oath prescribed; and where it does not appear that more than two were thus qualified and acted, the tax assessed by them is illegal."

From these cases it appears very clearly that if we are to be governed by the opinion of other courts, we must hold that at the meeting where four councilmen were in attendance it was within their power by a unanimous vote to suspend the rule. There was required by the statute to suspend the rule three-fourths of the council, but in the passage of an ordinance the requirement of a concurrence of a majority of the whole number of mem-

bers elected to the council was sufficient. (Compiled Statutes, ch. 14, art. 1, sec. 76.) It seems to us this particularity in prescribing that the majority in one instance must be of the whole number "of members elected to the council" indicates an intention on the part of the legislature that the general rule should govern provisions in the same chapter as to which no qualifying language was used. We therefore conclude that the rule was properly suspended by the vote by which, under the circumstances, it was attempted, and there being presented no question other than those considered, the judgment of the district court is

                                    AFFIRMED.