THOMAS MARTIN v. CITY OF OSKALOOSA, Appellant, And two other cases.

Special assessments: ORDINANCES. Where an ordinance authoriz-
1  ing an assessment of abutting property to pay street improve-

ments is wholly void, and no valid reassessment therby orderd can be made, a subsequent ordinance providing a legal method will not sustain the prior proceedings.

**Ordinances:** WHEN REQUIRED.  Where the statute requires an ordinance for the exercise of a power conferred upon a city, the proceedings of the city without the ordinance are void.

**Same.**  Although the statutes may not specifically require an ordinance for the exercise of a delegated power, yet if the statute is not specific as to the method, an ordinance may be necessary, and when enacted must be pursued.

**Same.**  Generally the authority providing for an exercise of a power granted to a city by the legislature should be by ordinance rather than by resolution, but where the council is required by the statute or a general ordinance to act simply by a vote or otherwise, a resolution is sufficient.

**Cities:** POWER TO LEVY SPECIAL ASSESSMENTS.  Where a statute conferring upon a city the power to make special assessments for improvement purposes points out the method to be pursued, the adoption of an ordinance for that purpose is not necessary.  Under this rule a city had power to assess the cost of street improvements to abutting property pursuant to statutory provisions substantially as contained in chapter seven, title five, of the Code, and the validity of the ordinance under which it purported to act was immaterial except so far as inconsistent with the statute.

**Codification:** STATUTORY CONSTRUCTION.  A general recodification and re-enactment of the statute law does not indicate a legislative intent to change the same, and the decisions relating to statutory provisions then in force will continue controlling in the interpretation of the same provisions; but where it is the plain legislative intent to radically change or materially add to the previous statutes, such decisions are not controlling.

**Reassessments.**  Where a city had authority to levy a special assessment, it may make a reassessment because of an irregularity, under Code, section 836.

*Appeal from Mahaska District Court.*— HON. JOHN T. SCOTT, Judge.

WEDNESDAY, FEBRUARY 15, 1905.

THREE several appeals from the action of the city council of the city of Oskaloosa in levying special assessments for

street improvements, taken by property owners to the district court. The causes were tried together, and decrees rendered in favor of the appealing property owners. From these decrees the city prosecutes the present appeal.— *Reversed.*

*Bolton & McCoy* and *C. C. Orvis* (*W. H. Bremner* and *Read & Read,* on the brief), for appellant.

*Gleason & Preston* (*N. T. Guernsey,* on the brief, and *Zink & Roseberry,* by separate brief), for appellees.

McCLAIN, J.— As these cases are now presented to us — an opinion written on a former hearing having been withdrawn on petition for rehearing — the issue involved is simple, although the arguments have taken a great range, and properly so, as we are asked to pass upon a question substantially new with us, and on which the decisions of other States throw light only by way of illustration. We shall confine ourselves, however, to the announcement of the conclusions reached with reference to the very case presented, and avoid elaboration as to many matters which have properly been urged in argument and fully considered, but which need not be passed upon, in view of the grounds on which this opinion is based.

The essential facts are that in May, 1901, the city council of Oskaloosa, by a " resolution of necessity," ordered the paving of a street in front of the premises of these three plaintiffs; making provision as to the material to be used, and manner of construction, and that the cost be " assessed against the abutting properties, as provided by law, except the intersections of said street, which shall be paid out of the improvement fund." At this time the ordinance regulating street improvements was No. 166 of the ordinances of the city which had been passed in 1896. Section 4 thereof provided for the levying of such assessments by the front-foot rule. This method of levying assessments had, however, been

in the meantime abrogated by statute, and another substituted. Acts Twenty-eighth General Assembly, page 14, chapter 29. It is conceded that at that time the assessment could not be made in accordance with section 4 of Ordinance No. 166. An assessment was, however, made on these property owners December 3, 1901, which subsequently, on appeal to the district court, was set aside as invalid, because made under the front-foot rule, and a reassessment was made January 21, 1902, in accordance with the statutory method of apportioning the costs of street improvements, and after the passage of a new ordinance (No. 223) on December 23, 1901, which repealed section 4 of Ordinance No. 166, and specifically authorized assessments to be made in accordance with the statutory method. The district court held the reassessment to be invalid, and it is with reference to this action only that the city is now asking relief in this court.

The substantial contention for the property owners is that Ordinance No. 166 had become void by reason of the enactment of the statute in effect annulling section 4 thereof; that, without a valid ordinance, no steps could be taken looking to an assessment; and that, as the assessment was entirely without authority of law, no reassessment could be made. For the city it is contended, first, that no ordinance was necessary to authorize the city to act in accordance with the provisions of the statute; second, that, although section 4 of Ordinance No. 166 had been invalidated, the remainder of the ordinance was in force, and effectual to authorize the city to proceed in ordering an improvement to be made, the cost of which could be assessed to the property owners; and third, that whatever invalidity or irregularity may have existed in the proceedings prior to the reassessment, they were not such as to prevent the city from making a valid reassessment of the improvement to the property owners.

It may be conceded, as a preliminary proposition, that if an ordinance was necessary to authorize the city to order

the improvement to be made, and if Ordinance No. 166 was entirely invalid in all its parts and for every

**1. SPECIAL AS-**
**SESSMENTS:**
**ordinances.**

purpose, then the whole proceeding was illegal and without authority and no valid reassessment for the improvement thus ordered could be made, and that the subsequent passage of Ordinance No. 223, providing a valid method of assessment, would not sustain the prior proceedings. *Conn. Mut. L. Ins. Co. v. Chicago,* 185 Ill. 148 (56 N. E. Rep. 1071); *East St. Louis v. Albrecht,* 150 Ill. 506 (37 N. E. Rep. 934); *Newman v. Emporia,* 32 Kan. 461 (4 Pac. Rep. 815); *Wace v. Prather,* 90 Tex. Civ. App. 80 (35 S. W. Rep. 958); *Buckley v. Tacoma,* 9 Wash. 269 (37 Pac. Rep. 441); *Crawford v. Mason,* 123 Iowa, 301; *Allen v. Davenport,* 107 Iowa, 90.

If the statute provides that the city shall exercise by general ordinance the power conferred upon it, such an ordinance is essential before the city can act, and without it the

**2. ORDINANCES:**
**when re-**
**quired.**

proceedings of the city in attempting to exercise the power conferred will be invalid. *Zelie v. Webster City,* 94 Iowa, 393; *Kepple v. Keokuk,* 61 Iowa, 653; *McManus v. Hornaday,* 99 Iowa, 507. And where the city exercises its power under and by virtue of an ordinance, the method prescribed by the ordinance must be pursued. *Burget v. Greenfield,* 120 Iowa, 432.

Even though the statute conferring power upon a city does not specifically direct that such power shall be exercised by means of and in accordance with, a general

**3. SAME.**

ordinance, an ordinance may be necessary, if the statute is not specific as to the methods to be adopted in carrying out the power granted. *Muscatine v. Keokuk N. L. P. Co.,* 45 Iowa, 185; *Eckert v. Town of Walnut,* 117 Iowa, 629; *People v. Village of Crotty,* 93 Ill. 180; *Cascaden v. Waterloo,* 106 Iowa, 673.

There is, perhaps, some discrepancy in the authorities as to whether, in this class of cases, an ordinance is essential,

or whether, on the other hand, the power may be exercised
by resolution, although this matter will be found
to depend, no doubt, on the language of the
statutes in the different States.    Under our statutory pro-
visions, it may perhaps very properly be said that the general
authority to provide how a power conferred by the Legis-
lature shall be exercised should be by ordinance, rather than
by resolution. See Code, sections 680–684.    *Shelby v.
Burlington,* 125 Iowa, 343.    But where it is simply re-
quired that the council shall act by vote or otherwise, in the
specific case, in accordance with a method pointed out by
statute or by general ordinance, a resolution is, no doubt,
sufficient.    *Santa Cruz Rock Pavement Co. v. Heaton,* 105
Cal. 162 (38 Pac. Rep. 693); *Atchison Board of Education
.v. De Kay,* 148 U. S. 591 (13 Sup. Ct. 706, 37 L. Ed.
573); *National Tubeworks Co. v. Chamberlain,* 5 Dak. 54
(37 N. W. Rep. 761); *Ashton v. Ellsworth,* 48 Ill. 299.
on the other, as to make the cases relied upon controlling.

But we do not regard the distinction between ordinance
and resolution as material in this case.    If a general ordi-
nance was necessary, and Ordinance No. 166 was invalid,
then the attempt by the city to proceed by means of a reso-
lution in the particular case was without authority, and the
proceedings were void.

We are of the opinion, however, that no general ordi-
nance was essential to enable the city to order the improve-
ment, and take the steps necessary to a valid assessment.
It certainly cannot be true that where the entire
procedure is regulated by statute, and nothing
is left to be determined by general ordinance,
the city can derive any greater authority from an ordinance
which simply re-enacts the provisions of the statute.    All
that can be essential in such a case is that the city take the
steps provided by the statute, and, if these steps are taken
as required, the assessment will certainly be valid.    Counsel

4. SAME.

5. CITIES: power
to levy
special assess-
ments.

have cited authorities to the proposition which they claim to be analogous, that a constitutional provision is not self-executing, and is of no force as conferring authority until it is put into effect by suitable statutory enactments. We need not discuss these cases, for the analogy, if any, is with the class of cases where the statute confers upon the city general authority, but leaves the method of procedure to be determined by ordinance. It can hardly be said that a constitutional provision — even one conferring power — cannot possibly take effect, no matter how specific it may be, until statutes have been enacted for the exercise of the power thus granted. But there is no such analogy between a constitutional provision and the powers to be exercised thereunder, on the one hand, and a statute conferring power upon a city, on the other, as to make the cases relied upon controlling. The full and plenary power of the Legislature to confer authority upon a municipal corporation, and to direct the method of its exercise, cannot be questioned; and if we find that the Legislature has conferred upon cities such as the defendant the power to order street improvements to be made, and to proceed in a prescribed method in making the improvements, assessing the cost upon abutting property owners, then there can be no question, in our judgment, that if the defendant pursued the method prescribed, and took the steps required, the assessments are valid. We turn, then, to the statutory provisions relating to street improvements and special assessments therefor, to ascertain whether there are such specific provisions taking effect without further action in the way of general regulation by the city, and whether the city has taken the essential steps to support an assessment under such provisions.

It may be conceded that, under the general statutory authority conferred upon cities in the Code of 1873, no proceeding for the making of street improvements and levying assessments upon abutting property could be instituted, except in pursuance of some general ordinance prescribing the

method of procedure to be followed.   But, between the enact·
ment of the Code of 1873 and the general revision of the
statutes of the State, made in the enactment of the Code of
1897, many statutes were passed, prescribing specifically the
method to be pursued in exercising these powers.   And when
the Legislature recodified the law relating to municipal cor-
porations in the Code of 1897, it retained many of the general
provisions of the Code of 1873, but embodied in separate
chapters of title 5, relating to " City and Town Government,"
much of the specific legislation which had already been
adopted.   Chapter 7 of that title contains these specific pro-
visions, the heading of the chapter indicating that it relates
to " Street Improvements, Sewers, and Special Assessments."

And here it may be said, in order to answer an argu-
ment elaborated by counsel, that while a general codification
and re-enactment of the law does not indicate any legislative
purpose to change the law, and the decisions

6. CODIFICATION:
  statutory
  construction.

relating to statutory provisions previously in
force are still to be considered as controlling in
the interpretation of the same provisions found in the codifi·
cation thereof, nevertheless, if the plain intention of the
Legislature is to radically change or materially add to the
previous statutory provisions, the decisions of the courts as
to prior statutes ought not to be regarded as binding in the
interpretation of such provisions as are new or fundamentally
changed.   To illustrate this view, we may compare the pro-
visions of Code, section 751, which gives cities the general
power to " establish, lay off, open, widen, straighten, nar-
row, vacate, extend, improve and repair streets," etc., which
is substantially retained from the Code of 1873, with the
specific provisions of chapter 7, based on legislation adopted
subsequently to the Code of 1873, amplifying the general
power to improve streets, and providing how the improve-
ment shall be made, for the purpose of assessing the cost on
abutting property.   Undoubtedly, any power attempted to be
exercised with reference to street improvements under Code,

section 751, must be exercised by means of a general ordinance, for neither that section, nor the sections following it in the same chapter, make any provision as to the method of exercising the power. But so far as the power is conferred by chapter 7, the method is specifically prescribed.

Considering in greater detail the provisions of chapter 7, we find that in section 792 cities are given power to improve any street, and to assess the cost on abutting property, " as provided in this chapter." By section 793 it is required that the construction of such an improvement shall not be ordered made, except by a three-fourths vote of all the members of the council, unless petitioned for by the owners of the majority of the linear front feet of the abutting property. By section 810 a proposed resolution declaring the necessity or advisability of the improvement, the kind of material proposed to be used, and the method of construction, is required, with notice, etc. And by section 811 the council is authorized by ordinance or resolution to order the making of the improvement proposed in the preliminary resolution. Subsequent sections provide specifically as to the contract for the improvement, bids, contractors' bonds, and the lien of the proposed assessment. In section 818 it is provided that the cost of making any street improvement " authorized in this chapter," except so far as the same involves the expense of improvement at street intersections, and the cost which may be assessed to street railways, " shall be assessed as a special tax against the property abutting " on the streets improved. And by sections 820–825 specific provision is made as to how the cost is to be ascertained, and the assessments to abutting property owners made. We cannot discover that anything is left to be provided for by general ordinance, nor that Ordinance No. 166 of defendant city contains any essential provisions not found in the Code. We therefore reach the conclusion that it is immaterial whether that entire ordinance was rendered invalid by the statutory abrogation of section 4 thereof, or whether it re-

mained in full force, save so far as it was inconsistent with the provisions of the Code; nor do we find that the new ordinance (No. 223) enacted after the improvement was ordered and constructed, but prior to the reassessment of the cost of the improvement to the property owners, contains any essential provisions not already in force in the defendant city as a part of the general law. Had the city proceeded in accordance with the general law to make the assessment for the costs of the improvement ordered in the resolution of necessity already referred to, such assessment would, in our judgment, have been valid.

But as it is conceded that the assessment first made was invalid, because made under section 4 of Ordinance No. 166, we reach the question whether the city had authority to

7. REASSESS-    reassess the costs to property owners under Code,
MENTS.    section 836, which provides that, " when by reason of nonconformity to any law or ordinance, or by reason of any omission, informality or irregularity, any special tax or assessment hereafter levied is invalid or is adjudged illegal * * * the council shall have the power to correct the same by resolution or ordinance, and may reassess or levy the same * * * with the same force and effect as if done at the proper time, in the proper amount, and in the manner provided by law or by the resolution or ordinance relating thereto." This section has been held valid and applicable where the kind of material to be used was not determined in advance. *Tuttle v. Polk,* 84 Iowa, 12, and 92 Iowa, 433. And in several cases it has been said that irregularities and defects in the proceedings might be thus cured. *Clinton v. Walliker,* 98 Iowa, 655; *Windsor v. Des Moines,* 101 Iowa, 343; *Ottumwa Brick & Const. Co. v. Ainley,* 109 Iowa, 386; *Gill v. Patton,* 118 Iowa, 88. And see *Freeport Street R. Co. v. Freeport,* 151 Ill. 451 (38 N. E. Rep. 137); *Baltimore v. Ulman,* 79 Md. 469 (30 Atl. Rep. 43).

The conclusion already indicated as to the validity of the steps taken by the defendant city, without regard to

whether the existing general ordinance was in force, leaves no difficulty in the way of sustaining the reassessment. So far as is pointed out, the only obstacle to the enforcement of the first assessment was that it had been " adjudged illegal," within the language of section 836, because made by the front-foot rule; and, without inquiring into the correctness of the decision as to its illegality, we find that a legal assessment might have been made, and therefore the reassessment was authorized.

The cases relied on by counsel for appellee are those in which some essential authority or step in the proceedings was wanting, as in *Zalesky v. Cedar Rapids,* 118 Iowa, 714, and *Allen v. Davenport* (C. C. A.) 132 Fed. 208. The view which we have taken with reference to the existence of the authority on the part of the city to order the improvement, and the taking of the essential steps to authorize an assessment, renders it unnecessary to discuss these and other cases which are relied upon by counsel. They do not call attention to any omission of the essential steps which the statute provides for, and the record shows, directly or by implication, all that is required for a valid assessment. We can presume that there was ample notice of the reassessment, for it appears from the records of the council that a resolution for a reassessment was passed January 6, 1902; that objection to the reassessment on the part of the plaintiffs in these cases was made to the council on the 31st of the same month; and that thereupon the council passed a resolution making the reassessment.

We reach the conclusion that the reassessments were valid, and that the decrees of the lower court in favor of plaintiffs were erroneous. They are therefore *reversed.*