### SLOCUM v. CITY OF NORTH PLATTE.

(Circuit Court of Appeals, Eighth Circuit. November 25, 1911.)

### No. 3,478.

1. MUNICIPAL CORPORATIONS (§ 868*)—CONTRACT FOR PURCHASE OF WATERWORKS—VALIDITY—NEBRASKA STATUTE.

The power conferred on cities of the second class in Nebraska by Comp. St. 1887, c. 14, § 69, subd. 15 (3), to provide for a supply of water by the purchase or construction of a system of waterworks, to issue bonds for the purpose, and provide for their payment by the levy of an annual tax not exceeding seven mills on the dollar on the property within the city, as such statute is construed by the Supreme Court of the state, comes within the exception of section 89 of said chapter, which provides that no contract shall be made nor expense incurred unless covered by the annual appropriation bill required to be passed during the first quarter of each fiscal year by section 86, "except as herein otherwise expressly provided," and a contract for the purchase of a waterworks plant is not invalid because no provision for payment therefor has been previously made by an appropriation bill.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1842; Dec. Dig. § 868.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WATERS AND WATER COURSES (§ 183*)—PUBLIC WATER SUPPLY—CONTRACT FOR PURCHASE OF WATERWORKS—VALIDITY.

Under Comp. St. 1887, c. 14, § 69, subd. 15 (3), which provides that cities of the second class may enact ordinances "to provide for the purchase * * * erection or construction of · a system of waterworks," conceding that such a contract can only be made by ordinance, a provision in an ordinance granting a franchise to a water company giving the city the right to purchase the company's plant at its election by giving six months' notice that thereupon, if the parties cannot agree, the plant shall be appraised by three persons to be selected as therein provided, and that, on the making of their award, "the city shall pay to said waterworks company * * * in cash the sum so ascertained within three months after the date of said award," on the giving of the notice of election, becomes a binding contract, and its validity is not affected by the fact that the notice was directed by motion or resolution, and not by another ordinance.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 183.*]

3. MUNICIPAL CORPORATIONS (§ 864*)—VALIDITY OF CONTRACT—PURCHASE OF PROPERTY.

A contract for the purchase of property made by a city under authority given by statute is not invalid because the city is without power to levy a tax sufficient to pay for the property.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1833, 1834; Dec. Dig. § 864.*]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Suit by Frank L. Slocum, as receiver of the North Platte Waterworks Company, against the City of North Platte. Decree for defendant, and complainant appeals. Reversed.

Francis A. Brogan (Robert F. Wendel, on the brief), for appellant. J. G. Beeler and John J. Halligan, for appellee.

Before HOOK, Circuit Judge, and RINER and REED, District Judges.

REED, District Judge. The appellant, Frank L. Slocum, a citizen of Pennsylvania, and the duly appointed receiver of the North Platte Waterworks Company, a corporation, brought this suit in the Circuit Court against the city of North Platte, a municipal corporation of Nebraska, to enforce specific performance of an alleged contract by the city to purchase the waterworks system of said company, which had been installed, and was being operated by it in that city. Upon final hearing the Circuit Court dismissed the bill and complainant prosecutes this appeal.

The record shows that on July 14, 1887, the city council of North Platte, a city of the second class in Nebraska, having less than ·5,000 inhabitants, pursuant to the authority conferred upon it by the Legislature of that state, passed an ordinance granting to the American Waterworks & Guarantee Company, a corporation of Pennsylvania, the right to construct, maintain, and operate a system of waterworks in that city for the purpose of supplying to the city and its inhabitants water for public and private use for a period of 20 years after

the passage of the ordinance upon terms specified therein, unless the system should be sooner purchased by the city as provided in the ordinance.

Secs. 1, 3, 8, and 17 of the ordinance are the only ones necessary to be considered, the material parts of which are:

"Section 1. That in consideration of the benefits which will result to the city of North Platte and its inhabitants, from the erection, maintenance and operation of waterworks in said city, there is hereby granted to the American Waterworks and Guarantee Company, limited, of the city of Pittsburg, in the state of Pennsylvania, its associates, successors or assigns the right to establish, operate and maintain a system of waterworks, * * * in the city of North Platte, * * * for supplying water for domestic and other purposes, for a term of twenty years; unless sooner purchased by the city according to the terms of this ordinance."

"Sec. 3. That * * * the city hereby agrees to rent and does rent for a term of twenty years, 45 double discharge, antifreezing fire hydrants, to be located at such points as the city council may select, * * * at an annual rental of $65 each, payable semiannually on the 1st day of January and July of each and every year during said term. * * * "

"Sec. 8. The city of North Platte shall have the option and privilege, at any time after the expiration of ten years from the passage of this ordinance, upon giving six months' prior notice in writing to said waterworks company, * * * to purchase said waterworks and all property connected therewith and necessary for the effective operation of the same, at the fair valuation to be ascertained as follows: In the event of said city and said waterworks company * * * failing to agree upon the price, then three disinterested experts of good intelligence not residents of Lincoln county, shall be chosen to determine the value, one to be appointed by said city, one by said waterworks company * * * and the other by the two arbitrators so appointed. The three shall then proceed to determine the value of said waterworks, * * * and when said appraisers or a majority of them agree in writing upon the award the city shall pay to said waterworks company * * * in cash, the sum so ascertained within three months after the date of said award; and any failure upon the part of the city to pay the sum so ascertained in the time aforesaid, shall be taken and deemed to be a waiver on the part of the city of its right to purchase under said appraisement. All costs of the appraisement shall be paid by the city. The city in such purchase shall assume and perform all unfinished contracts to furnish water, and as a part of the purchase price shall assume and pay all outstanding obligations of the said waterworks company * * * not to exceed in any event the amount of said appraisement; provided, however (Sec. 17), that in the event of said city electing to use this option to purchase under this contract, it shall not be compelled to assume obligations which mature more than twenty years from the passage of this ordinance, nor any obligation which bears a greater rate of interest than six per cent. per annum."

The American Waterworks & Guarantee Company accepted the ordinance, and the system was constructed by it, and was duly accepted by the city. The North Platte Waterworks Company, a corporation of Nebraska, has succeeded by assignment or transfer to the rights of the American Waterworks & Guarantee Company, and the appellant has been duly appointed as receiver of that company in a suit of the American Waterworks & Guarantee Company against the North Platte Waterworks Company, and as such prosecutes this suit. The latter-named company will for convenience be called the Water Company.

This ordinance and the contract therein for the hydrant rentals were upheld by the Supreme Court of Nebraska in North Platte Wa-

terworks Co. v. City of North Platte, 50 Neb. 853, 70 N. W. 393, and City of North Platte v. North Platte Waterworks Co., 56 Neb. 413, 76 N. W. 906.

The city now challenges the validity of section 8 of the contract whereby it acquired the right to purchase the property, upon the ground that an appropriation had not been previously made to pay for such waterworks and included in "an appropriation bill" that the city is required to pass in the first quarter of each fiscal year. It also contends that, if the section is adjudged valid, the city council never exercised its privilege or option to purchase the property in a way that is binding upon the city. These are the principal questions for determination.

[1] Laws of Nebraska 1879, p. 210, as amended (Compiled Statutes of Nebraska 1887, Annotated, ch. 14, art. 1) in force when the ordinance was passed, provides as follows:

"Sec 69. In addition to the powers hereinbefore granted cities (of the second class) and villages under the provisions of this chapter, each city and village may enact ordinances or by-laws for the following purposes:

"I. To levy taxes for general revenue purposes, not to exceed ten mills on a dollar in any one year on all property within the limits of the city. *  *  *

"II. To levy any other tax or special assessment authorized by law.
*          *          *          *          *          *          *          *          *

"XV.—(1) To establish, alter, and change the channels of water courses, and to wall them and cover them over; to establish, make and regulate wells, cisterns, windmills, aqueducts, and reservoirs of water, and to provide for filling the same. (2) To make contracts with and authorize any person, company or corporation to erect and maintain a system of waterworks and water supply, and to give such contractors the exclusive privilege for a term not exceeding twenty-five years, to lay down in the streets and alleys of such city or village water mains and supply pipes, and to furnish water to such city or village and the residents thereof, and under such regulations as to price, supply, rent of water meters, as the council may from time to time prescribe by ordinance for the protection of the city, or people. *  *  *  (3) To provide for the purchase of steam engines, *or fire extinguishing apparatus,* and for a supply of water for the purpose of fire protection and public use and for the use of the inhabitants of such cities and villages, by the purchase, erection or construction of a system of waterworks, and by maintaining the same. Provided, that all contracts for the erection or construction of any such work, or any part thereof, shall be let to the lowest responsible bidder therefor, upon not less than twenty days' public notice of the terms and conditions upon which the contract is to be let; *  *  *  and in all cases the council *  *  *  shall have the right to reject any and all bids that may not be satisfactory to them. Such cities or villages may borrow money, or issue bonds for the purpose, and levy and collect a general tax in the same manner as other municipal taxes may be levied and collected for the purchase of steam engines, *or fire extinguishing apparatus,* and for the purchase, erection or construction and maintenance of such water works, or to pay for water furnished such city or village under contract to an amount not exceeding 7 mills on the dollar in any one year on all property within such city, in addition to the sum authorized to be levied under subdivision one of this section, and all taxes raised under this clause shall be retained in a fund known as "Water Fund"; Provided that no such money shall be borrowed, or bonds issued, unless the same shall have been authorized by a vote of the majority of the electors of such city. *  *  *"

In 1893 the Legislature amended paragraph 3 by inserting the words, *"or fire extinguishing apparatus,"* after the words, "steam engines," in said paragraph as above set out. Chapter 8, Laws 1893.

The act further provides:

"Sec. 86. The city council of cities and board of trustees in villages shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned, by a majority of the legal voters of such city or village, either by a petition signed by them or at a general or special election duly called therefor, and all appropriations shall end with the fiscal year for which they were made.   *   *   *"

"Sec. 88.  *  *  *  Neither the city council or the board of trustees nor any department or officer of the corporation shall add to the corporation expenditures in any one year anything over and above the amount provided for in the annual appropriation bill for that year, *except as herein otherwise specially provided*, and no expenditure for any improvement to be paid for out of the *general* fund of the corporation shall exceed in any one year the amount provided for such an improvement in the annual appropriation bill.  *  *  *

"Sec. 89. No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, *except as herein otherwise expressly provided.*

"Sec. 90. All money received on special assessments shall be held by the treasurer as a special fund to be applied to the payment of the improvement for which the assessment was made, and said money shall be used for no other purpose whatever, unless to reimburse such corporation for money expended for such improvement."

It is the contention of the city that sections 88 and 89 prohibited the city from contracting for the purchase of the waterworks unless an appropriation had been previously made by the city council, or funds provided with which to pay for the same. In other words, that the authority to make the contract was dependent upon funds having been first provided to pay for the waterworks. The power of the city to contract is conferred by section 56, c. 14, Compiled Statutes of 1887, and is as follows:

"Sec. 56. Cities of the second class and villages governed by this chapter shall be bodies corporate and politic, and may sue and be sued; contract or be contracted with; acquire, hold, and convey property real or personal; *  *  *  and such other powers as may be conferred by law."

The power of the city to contract is not by this section made to depend upon its having previously provided funds with which to pay for that which it contracts. Sections 86–89 above are obviously only intended to restrict the current expenditures of the city to the amount of the general revenue or fund that the council is authorized to raise by the general tax levy each year, and provide for the disbursement of the same by an "annual appropriation bill." The special funds to be raised in addition to the general tax levy, whether by borrowing money, or the levy of taxes in addition to the general levy, as provided in paragraph 3 of subdivision 15 of section 69,

plainly fall within the clause, *"except as herein otherwise expressly provided,"* of sections 88 and 89. This is so held by the Supreme Court of Nebraska in City of North Platte v. North Platte Waterworks Co., 56 Neb. 413, 76 N. W. 906, above. In this case the Water Company sued the city to recover for hydrant rentals which had accrued for several years, under section 3 of the ordinance in question, and which the city had for some reason neglected or refused to pay. As a defense to the action the city alleged the invalidity of the ordinance so far as it provided for the rent of the hydrants, and the payment of such rents, because the amount thereof was not included in the annual appropriation bills. In deciding against this defense, the court, after reviewing its prior decision, said:

"The power to contract with individuals or corporations for a supply of water to be furnished for a term not exceeding 25 years implies the power to provide that the payments shall be made as the right to receive them accrues without an appropriation having been previously made with reference to the several payments as they shall mature. * * * Clearly such an appropriation could not be made to cover the sum to fall due in a period of perhaps 25 years. To hold that the city could not contract for water or hydrant rentals without an antecedent appropriation to defray the sums to fall due would effectually prevent the making of contracts in advance for furnishing water for any period of years. We are of opinion that in the case at bar it was not necessary to show an appropriation to have been made as a condition precedent, indispensable to a right of recovery of a judgment against the city."

The same may be said of a contract to purchase a system of waterworks. Though the amount that a tax of seven mills on the dollar on all taxable property of the city would produce does not definitely appear from the record, it is obvious that such a levy would be insufficient to pay for a system of waterworks adequate to supply the wants of the city and its inhabitants; and, if the city may not anticipate the amount it is authorized to levy in each year for such purpose, this would effectually prevent the city from purchasing a system of waterworks to be paid for during a period of years, as it collected the tax that it is authorized to levy for such purpose.

But it is said that the contract to pay the "hydrant rentals," which alone was involved in City of North Platte v. North Platte Waterworks Co., was made under paragraph 2 of subdivision 15 of section 69, and that the decision is inapplicable to contracts made under paragraph 3 of that section, under which the contract to purchase the waterworks was made, if made at all; and Gutta-Purcha Rubber & Mfg. Co. v. Village of Ogalalla, 40 Neb. 775, 59 N. W. 513, 42 Am. St. Rep. 696, and other cases are cited in support of this contention. But a contract to purchase waterworks and a levy of a tax to pay therefor is as clearly authorized by paragraph 3 of subdivision 15, as the contract to rent the fire hydrants and pay therefor is authorized by paragraph 2, and is equally within the exceptions to sections 88, 89.

Gutta-Purcha Rubber & Mfg. Co. v. Village of Ogalalla was an action to recover from the village some $590 as the price of certain hose, hose carts, reels, and other apparatus of like character in com-

mon use by town and village fire companies. The village admitted that its board of trustees had made a contract with the rubber company for the purchase of such apparatus, but alleged that such contract was void because an appropriation had not been previously made to pay for the property, as required by sections 86 and 89. The price of the apparatus was to be paid from the general revenue of the village, but, no appropriation having been made therefor, the contract was forbidden. The case did not fall within any of the exceptions to the statute, and the defense was therefore sustained. The case was decided in June, 1894; but in 1893 the Legislature amended paragraph 3 of subdivision 15 by inserting the words, "or fire extinguishing apparatus," after the words, "steam engines," in said paragraph. This clearly indicates the purpose of the Legislature to thereafter place contracts for the purchase of such apparatus in the same class as contracts for steam engines and waterworks, thus bringing them within the exceptions to sections 88, 89, as later construed by the Supreme Court of Nebraska in the North Platte Waterworks Company Case.

City of Blair v. Langtry, 21 Neb. 247, 31 N. W. 790, and McElhinney v. City of Superior, 32 Neb. 744, 49 N. W. 705, are also relied upon by appellee. But these cases and others, including the Village of Ogalalla Case, are reviewed in the North Platte Waterworks Company Case, and the distinction between them and the contract and ordinance in question clearly stated, and they need not be further noticed. Many cases in the courts of other states are also cited and relied upon by the city. These cases were determined under statutes of the various states in which the cases were decided. They need not be considered, for the statute of Nebraska under which the ordinance in question was enacted and the contract made has been construed by the Supreme Court of that state as we read its decisions, and the construction so placed upon it is controlling here.

We are therefore of opinion that the contract to purchase the waterworks in question is not void, because the amount thereof was not included in an annual appropriation bill or bills of the city of North Platte.

[2] Did the city elect to purchase the waterworks in a way that is legally binding upon it? At the time of the passage of this ordinance a vote of the electors of the city was not necessary to its validity; but, to enable the council to borrow money or issue bonds to pay for a system of waterworks, the assent of a majority of the electors was required. In January, 1905, the electors of the city at an election duly called for that purpose voted by the requisite majority to issue $60,000 of bonds of the city to raise money with which to "build, purchase, or otherwise acquire" a system of waterworks to be owned and operated by the city. The bonds so voted were subsequently signed by the proper officers, duly registered as required by law, and were ready for negotiation whenever the city was able to negotiate them. At the time of such election there was no other system of waterworks in the city that it could purchase except the one in question.

After such election, and on June 20, 1905, the city council (which

consists of the mayor and six councilmen) at a meeting thereof acted as follows as appears from its records:

"Moved by Stamp and seconded by Yost that a committee of three be appointed for the purpose of taking up the matter of preliminary negotiations with the Water Company, for the purchase of the waterworks system. Motion carried. Mayor appointed Councilmen Stamp, Duke, and Ginn as the Committee."

July 17, 1905, the committee so appointed addressed and delivered to the Water Company a communication in writing as follows:

"City of North Platte, Nebraska, July 17, 1905.

"The North Platte Waterworks Co., City.

"Gentlemen: The citizens of this city having, in January last, voted bonds for the purpose of raising money to build, purchase or otherwise acquire a system of waterworks, to be owned and operated by the city of North Platte, the city council, believing it would be to the best interest of all concerned to purchase the plant owned by you in this city, provided, of course, that we can mutually agree on price, etc., the mayor, by their instructions, has appointed a committee to confer with you in regard to the matter.

"Therefore I, as chairman of said committee would be pleased to hear from you concerning your disposition to sell your plant to the city, together with the lowest amount you would be willing to take for same, and any other information that might be of value in the consideration of the matter.

"As we are desirous of coming to an understanding with the least possible delay, consistent with the proper consideration of the matter, we hope it will be convenient for you to let us hear from you at as early a date as possible.

"Awaiting reply, I am very truly yours,

"C. H. Stamp, Chairman Waterworks Committee."

After some verbal negotiations the Water Company on September 21, 1905, delivered to the city the following communication in writing:

"North Platte, Neb., Sept. 21, 1905.

"The Honorable Mayor and Councilmen, City of North Platte, Neb.

"Gentlemen: In confirmation of our interview today, and in reply to Mr. Stamp's favor of July 17th, the North Platte Waterworks Company offers to sell to the city of North Platte its waterworks system and properties in said city for the sum of $139,000; or at any price that may be fixed by three disinterested competent persons, one to be selected by the city, one by the Water Company and the third by the two, in accordance with and as provided for in the present water contract.

"Yours respectfully, North Platte Waterworks Company, H."

On May 15, 1906, the city council (one member being absent) unanimously adopted the following motion:

"Moved by Graham and seconded by Yost that the city clerk be instructed to notify the American Waterworks & Guarantee Company that the price submitted for the purchase of the North Platte Waterworks, is hereby rejected and that the city of North Platte desires to proceed in accordance with provisions of section 8 of the ordinance granting the franchise of having three disinterested experts appointed as therein provided. Motion carried."

On May 21, 1906, the city council delivered to the Water Company a communication in writing as follows:

"North Platte, Nebr., May 21st, 1906.

"American Waterworks & Guarantee Co.

"Gentlemen: At a meeting of the city council of the city of North Platte, Neb., the following resolution was unanimously adopted: 'That the city clerk

be instructed to notify the American Waterworks & Guarantee Co., that the price submitted for the purchase of the North Platte Waterworks is hereby rejected, and that the city of North Platte desires to proceed in accordance with provisions of section 8 of the ordinance granting the franchise, of having three disinterested experts as therein provided.'

"Charles Samelson, City Clerk.    [Seal.]"

June 5th following the city council acted as follows:

"Moved by Yost and seconded by Stack that the clerk notify the North Platte Waterworks Company that the city of North Platte has appointed its appraiser, and request them to appoint their appraiser and notify the city council of such appointment, on or before the 19th day of June, 1906.

"I hereby certify that the above motion was adopted by the city council at a regular meeting held on the 5th day of June, 1906, and that the above is a true copy of the same as it appears on the city records.

"Charles Samelson, City Clerk.    [Seal.]"

Which copy was delivered to the Water Company by the city council June 9, 1906. The Water Company thereupon appointed its appraiser, notified the city thereof in writing, and the two so appointed selected a third, and the three so selected duly appraised the plant at $85,021, exclusive of its going value, made an award thereof in writing, and delivered to the city and Water Company each a duplicate thereof.

The city was not satisfied with this appraisal, and, after it was made, endeavored to make other arrangements with the Water Company, who, in turn, made counter proposals to the city. Without setting forth in detail these proposals and counter proposals, it must suffice to say that in our opinion they were but mere negotiations looking to some arrangement for the taking over of the waterworks by the city, which negotiations never resulted in any agreement between the parties modifying that of the ordinance; and during all such negotiations the Water Company insisted that it was entitled to the amount of the award for its waterworks, and that it would insist upon the payment thereof by the city for the property. The city was unable for some reason to negotiate the bonds so voted, and the council subsequently canceled the same.

In August, 1909, the electors of the city at an election called for that purpose voted by the requisite majority to issue $100,000 of water bonds to raise money with which to construct a system of waterworks to be owned and operated by the city, and the council thereafter adopted plans for such a system and was about to negotiate the bonds so voted to raise the necessary funds with which to construct the same when the Water Company in November following made and tendered to the city a sufficient deed of its water plant and property, and demanded of the city payment of the award of the appraisers, which being refused this suit was brought to enforce performance by the city of its alleged contract to purchase such waterworks, and to restrain the city from negotiating the bonds so voted and from constructing another system of waterworks in the city. The action of the city council as hereinbefore set forth especially that of May 15, 1906, and after, is susceptible of no other meaning than that it is an unequivocal election upon its part to purchase the property

for the city under section 8 of the ordinance, and upon the terms specified in that section.

But it is contended by the city that its council could legally elect to purchase the property only by ordinance. Section 69, c. 14, pp. 181, 182, Comp. St. Neb. 1887, provides that cities of the class to which North Platte belongs *may* enact ordinances for the following among other purposes:

"XV.— * * * (2) To make contracts with, and authorize any person, company or corporation to erect and maintain a system of waterworks and water supply, and to give such contractors the exclusive privilege for a period not exceeding twenty-five years," to lay mains and supply pipes in the streets and alleys of the city, and erect the necessary buildings to enable it to furnish water to the city and its inhabitants. Also "(3) to provide for the purchase, * * * erection or construction of a system of waterworks, and by maintaining the same. * * *"

Admitting without deciding that the contract to purchase must itself be by ordinance and not merely authorized by ordinance, then the contract in question providing for such purchase is by ordinance. The main purpose of the city in granting the franchise and making the contract was to secure a supply of water for the use of the city and its inhabitants; and of the water company in accepting the grant and agreeing to the contract was to secure the right to furnish the water for the period stated and upon the terms specified. The agreement of the Water Company that the city should have the right to purchase the waterworks is an inseparable part of the contract, and is a continuing and irrevocable offer upon its part to sell the waterworks to the city; and, when the city shall legally give the requisite notice of its election to purchase, the contract of purchase would at once become complete. It is admitted by counsel for the defendant that the city council may lawfully contract by motion or resolution except where it is forbidden by its charter to do so. If it may so contract, why may it not so give the notice required by this ordinance? We are cited to no statute of Nebraska other than the sections above referred to which it is claimed forbids it from so contracting, and we are unable after somewhat diligent search to find any.

In Nelson v. City of South Omaha, 84 Neb. 434, 121 N. W. 453, the statute under which South Omaha was organized provided as follows:

"In addition to the powers herein granted, cities governed under the provisions of this act shall have power by ordinance: (1) To levy a tax for general revenue purposes; (2) To levy any other tax or special assessment. (3) The mayor and city council shall have the authority to create street improvement districts for the purpose of improving the streets," etc.

This charter provision seems to be even more strict than is that of North Platte, for it provides that cities governed under its provisions "shall have power by ordinance" to do the thing specified, thus apparently limiting their power to act by ordinance; while the North Platte charter provides that each city and village acting under its provisions "may enact ordinances or by-laws for the following purposes," thus apparently investing them with some discretion in the manner in which they shall exercise their corporate powers. The

city council of South Omaha acting under the authority conferred upon it let contracts for the paving and improvement of certain streets of the city, without having provided therefor by ordinance, and it was contended in 'behalf of the city that such contracts were void because the improvements were not ordered by ordinance. But after referring to other provisions of the charter, and reviewing its own decisions and many other authorities, the court upheld the contracts, saying:

"While the provisions for the letting of the contract for paving and curbing is simply required to be ordered and to be let to the lowest responsible bidder, there is nowhere any special provision in said subdivision which requires the ordering of the curbing and paving or the letting of the contract to be by ordinance."

This is in accord with the general rule, which is that where the charter of a municipal corporation authorizes its council or managing board to act upon a matter, but is silent as to the manner in which it shall so act, the authority may be exercised by motion or resolution duly passed or vote duly taken. Atchinson Board of Education v. Dekay, 148 U. S. 591–598, 13 Sup. Ct. 706, 37 L. Ed. 573, and cases cited; Merchants' Barb Wire Co. v. Chicago, Burlington & Quincy Ry. Co., 70 Iowa, 105–107, 28 N. W. 494; Martin v. City of Oskaloosa, 126 Iowa, 680–685, 102 N. W. 529.

That the ordinance in question was passed in the manner required by the charter of the city of North Platte is not questioned, and we are of opinion that another ordinance was not required to enable the city council to give the required notice to the Water Company of its election to purchase the waterworks; that such notice might legally be directed or·ordered to be given by motion or resolution of the council duly passed; and that it was so ordered and given. Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 76 C. C. A. 516, and cases cited; Cherryvale Water Co. v. City of Cherryvale, 65 Kan. 219, 69 Pac. 176–179; Nelson v. South Omaha, 84 Neb. 434, 121 N. W. 453–454 above, and cases cited.

It is further urged in behalf of the city that section 8 of the ordinance authorized the ascertainment of the value of the property before the city was required to make its election to purchase, and to better enable it to determine whether or not it would make the purchase, and that the city and the Water Company by their conduct have so construed the meaning of said section. We are unable to assent to this. There is no ambiguity or uncertainty in the meaning of section 8 of the ordinance. It plainly says that the city of North Platte shall have the option and privilege upon giving six months' prior notice in writing to said Water Company to purchase said waterworks at the fair valuation, to be ascertained (1) by agreement of the parties; and, failing to so agree, (2) by appraisers to be selected in the manner provided. It then provides:

"And when said appraisers, or a majority of them agree in writing upon the award the city shall pay to said waterworks company * * * in cash the sum so ascertained within three months after· the date of said award."

Until the election to purchase is made nothing is required to be done towards ascertaining the value of the property. In other words,

the election of the city to purchase must precede the ascertainment of the value; and, when the award of the appraisers is made, the time in which the price shall be paid is fixed. Montgomery Gaslight Co. v. City of Montgomery, 87 Ala. 245, 6 South. 113–115, 4 L. R. A. 616.

[3] It is finally urged that the city is without authority to levy a tax sufficient to pay the appraised value of the property. If this be true, it is no defense to this suit. The power of the city to contract for the purchase of the property exists independent of its power to raise money to pay for the same. City of Ft. Madison v. Ft. Madison Water Co., 114 Fed. 292, 52 C. C. A. 204; United States v. Clark County, 96 U. S. 211, 24 L. Ed. 628; Hitchcock v. Galveston, 96 U. S. 341–349, 24 L. Ed. 659; United States v. Macon County, 99 U. S. 582, 25 L. Ed. 331; Creston Waterworks Co. v. City of Creston, 101 Iowa, 687, 70 N. W. 739. Whether or not it may be compelled to levy a tax to pay for the same is not now before us, and need not be considered.

Some other matters are urged in behalf of the city to defeat a recovery against it by the appellant; but it must suffice to say that we have considered all matters so urged and deem them to be without substantial merit.

The Water Company having tendered to the city in due time a sufficient deed of its waterworks and appurtenant property, at least one to which no objection was made by the city so far as this record shows, the appellant is entitled to a decree against the city for the appraised value of the waterworks and for the specific performance by the city of its contract to purchase the same. Upon payment by the city of such value, within a reasonable time to be fixed by the Circuit Court upon the return of the cause to that court, the appellant will cause to be satisfied of record all incumbrances placed by him or the Water Company upon the waterworks system (unless the city shall agree to assume such incumbrances, or such part thereof as it may agree with the appellant that it will assume and relieve the Water Company and the appellant from the payment thereof), and turn over to the city said waterworks system and other property included in the award of the appraisers, and a good and sufficient deed and conveyance of all of such property to the city. See City of Omaha v. Omaha Water Co., 192 Fed. 246, No. 3,539, decided at this term.

The decree of the Circuit Court is reversed, and the cause remanded to that court with directions to enter a decree for the appellant in accordance with the views expressed in this opinion.

It is ordered accordingly.