ELLIS v. TREAT et al. *

(Circuit Court of Appeals, Ninth Circuit. September 5, 1916.)

No. 2758.

1. SPECIFIC PERFORMANCE ☞126(3)—ACTIONS—RIGHT TO—VARIANCE.
     The courts cannot make contracts for parties, and a decree of specific performance must conform to the precise contract between the parties; therefore, under a complaint seeking specific performance of a contract, whereby defendant was to transfer mining claims to a corporation and to deliver to complainants a percentage of the stock, a decree of specific performance, directing defendant, the corporation not having been formed, to transfer such percentage of the claims to complainants, is invalid.

     [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 401; Dec. Dig. ☞126(3).]

2. ESTOPPEL ☞56—EQUITABLE ESTOPPEL—HOW RAISED.
     Where defendant, having agreed to transfer the mining claims to a corporation to be formed and to deliver a percentage of the stock to complainants, leased the claims, the incorporation being abandoned, under an instrument reciting that complainants were the owners of a percentage of the property, defendant is not estopped, complainants not having changed their position, from denying that they had title to any part of the claims.

     [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 142; Dec. Dig. ☞56.]

3. SPECIFIC PERFORMANCE ☞28(1)—CONTRACTS—INDEFINITENESS.
     Specific performance of the contract must be denied, where it did not fix the amount of the capital stock of the proposed corporation, the number or value of its shares, the number of its directors, the place of its business, its powers or its duration, for the contract is too indefinite to be enforced.

     [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 61, 65, 66; Dec. Dig. ☞28(1).]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 23, 1916.

4. SPECIFIC PERFORMANCE ⚖119—RIGHT TO—PERFORMANCE BY COMPLAINANT.

Where complainants were to dispose of 10 per cent. of the capital stock, the proceeds of which was to be used in development work and it did not appear when specific performance was sought that complainants were then able to make such sale, the project having been delayed because of their previous inability, specific performance must be denied; complainants not showing that they were able to do equity.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 382, 383; Dec. Dig. ⚖119.]

5. EQUITY ⚖66—MAXIMS—DOING EQUITY.

Under the rule that he who seeks equity must do equity, specific performance, which is a discretionary remedy, will be denied, where complainant does not, on his part, show compliance with the substantial conditions of a contract.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 188-190; Dec. Dig. ⚖66.]

6. SPECIFIC PERFORMANCE ⚖14—RIGHT TO—DENIAL.

Specific performance of a contract to convey mining claims to a corporation to be formed and to deliver to complainants a percentage of the total shares will be denied, because calling for action by persons other than those who are parties to the contract, necessitating intervention of directors, etc.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 33, 41; Dec. Dig. ⚖14.]

7. SPECIFIC PERFORMANCE ⚖62—RIGHT TO—TRANSFER OF CORPORATE STOCK.

Specific performance of a contract to convey shares of corporate stock will be denied, unless the facts show an unusual and exceptional situation in which damages will be inadequate; therefore, where it did not appear that damages would be inadequate, specific performance of a contract to convey mining claims to a corporation to be formed, and transfer a percentage of the shares to complainants, will be denied.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 188; Dec. Dig. ⚖62.]

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Bill by George C. Treat and others against H. E. Ellis. From a decree for complainants, defendant appeals. Reversed and remanded, with directions to dismiss.

On May 15, 1907, the appellant, the owner of the Mystic lode mining claim, entered into an agreement with the appellees Treat and Smith, whereby the latter advanced $500 to pay for shipping five tons of ore from said mining claim to a smelter. Treat and Smith were to receive back their $500, and also one-fourth of the net returns from the smelter, and in case those returns were insufficient to repay said $500 to Treat and Smith, they were to have a lien on the mining claim to secure the same. They received nothing from the smelter returns. On July 9, 1908, the parties entered into an agreement whereby the appellant was to deed eight mining claims, including the Mystic mining claim to a corporation to be called the Mystic Gold Mining Company. The whole of the capital stock of the corporation was to be issued to the appellant, and he was to transfer to Treat and Smith 20 per cent. thereof, and to turn over to the treasurer of the corporation an additional 20 per cent., to be sold to pay for development work, etc. Treat and Smith agreed to pay all the expenses of incorporating the company, recording and filing necessary papers, and to receipt in full for all claims they had against the appellant, and "to give whatever time and attention that might be necessary to the proper organization of said corporation and the sale of said stock." Articles of incorporation were prepared by Smith, but were not executed. The parties

were unable to sell any of the stock, and no stock was ever issued. On June 5, 1909, one Crane secured an option on the mining claims, with the right to lease the same for a period of six years. In the option it was provided that 85 per cent. of the royalty under the lease was to be paid to the appellant, and the remainder to Treat and Smith. The option was not carried out, and on July 23, 1909, Miller, trustee, was substituted for Crane, and a lease was made which recited that the appellant was a four-fifths owner, and Treat and Smith each owned 10 per cent. of the mining claims. The lessee paid to the appellant under the lease something over $50,000, and to Treat and Smith about $7,000, but surrendered possession of the premises in July, 1914. In May, 1915, the appellees began their suit against the appellant for specific performance ·of the contract of July 9, 1908, alleging that, owing to the stringency of the money market and the difficulty that would be experienced in selling treasury stock of the proposed corporation to advantage, it was decided by all the parties to the contract of July 9, 1908, to await a more opportune time to form the corporation, and that, while awaiting that time, the leases were made to the mining claims, with the understanding that at the termination thereof the corporation would be formed, and the contract of July 9, 1908,· would be carried out. The prayer of the complaint was that the appellant specifically perform the contract of July 9, 1908, or that he convey to the appellees Treat and Smith each an undivided one-tenth interest in all of the eight mining claims, and that the said appellees be adjudged and decreed to be the owners of an undivided one-fifth interest in all machinery, tools, equipment, buildings, and improvements placed on said mining claims.

The answer of the appellant alleged that about two months after the execution of the contract of July 9, 1908, Treat and Smith informed the appellant that they could not carry out their part of the contract, and asked him to pay them the money which he owed them, and that it was then specifically agreed between the parties that the contract of July 9, 1908, should be abandoned, and that Treat and Smith should hold the mining claims of appellant as security for the money formerly owing to them, from the payment of which the appellant was to have been released under the terms of the contract of July 9, 1908. The decree adjudged Treat to be the owner of, and entitled to, the immediate possession of an undivided one-tenth interest, and that Smith and Archibald, to whom Smith had transferred a one-half interest, were each the owner of, and entitled to the immediate possession of, an undivided one-twentieth interest of the eight mining claims, and required the appellant to convey said interests to the respective appellees.

T. C. West, of San Francisco, Cal., and Charles Ganty, of Valdez, Alaska, for appellant.

Donohoe & Dimond and Lyons & Ritchie, all of Valdez, Alaska, and Smith, Newcomb & Worthington, of Seattle, Wash., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The assignments of error bring in question the sufficiency of the complaint to state a cause of suit, and the propriety of the decree which was rendered thereon. The decree is clearly erroneous, for the reason that it is unsupported by the allegations of the complaint. It does not appear from the complaint that the appellant ever promised or agreed to convey to the appellees Treat and Smith any interest in the mining claims. What the appellant agreed to do was to convey to a corporation thereafter to be formed eight mining claims, in consideration of all the stock of the corporation, and thereafter to transfer to the appellees 20 per cent. of the stock. The decree treats the contract as a contract to convey an interest in real estate, which it is not. It is an agreement to transfer personal property. No principle of the

law of specific performance is more thoroughly established than that the decree must conform to the precise contract made between the parties. A court will not make a contract for them. 36 Cyc. 789; Gachet v. Morton, 181 Ala. 179, 61 South. 817; Philadelphia & Reading Railroad v. Lehigh Navigation Co., 36 Pa. 204. The fact that the lease of the mining property contained the recital that the appellant and Treat and Smith were the owners of the property cannot be held to estop the appellant now to dispute the appellees' claim of title. The essential elements of estoppel are lacking. It is not shown that Treat and Smith relied on any admission of their title by the appellant, or that they changed their position as to the property in any way, and there is no proof that the original contract was ever changed.

It remains to be considered whether, under the allegations of the bill, and the prayer for such other and further relief as may be just and equitable, the appellees are entitled to a decree for the specific performance of the contract which they pleaded. There are several reasons why such relief must be denied them:

[3] 1. The contract as pleaded is too indefinite and uncertain to justify a decree of specific performance. It contains no mention of the amount of the capital stock of the proposed corporation, the number or value of its shares, the number of its directors, the place of its business, its powers, or its duration. It is the accepted rule that the minds of the parties must have met upon all the terms of the contract the specific performance of which is sought to be enforced. Pressed Steel Car Co. v. Hansen, 137 Fed. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172; Jones v. Patrick (C. C.) 145 Fed. 440; Williams v. Stewart, 25 Minn. 516; McKnight v. Broadway Investment Co., 147 Ky. 535, 145 S. W. 377; Schenck v. Ballou, 253 Ill. 415, 97 N. E. 704, Ann. Cas. 1913A, 251; Talmadge v. Arrowhead R. Co., 101 Cal. 367, 35 Pac. 1000; Tharp University v. Komus Realty Co., 159 Ky. 386, 167 S. W. 136; Ward v. Newbold, 115 Md. 689, 81 Atl. 793, Ann. Cas. 1913A, 919; Strack v. Roetzel (Okl.) 148 Pac. 1017.

[4, 5] 2. The appellees have never performed the covenants which were to be kept and performed by them. They allege in their complaint that performance was rendered impossible by the stringency of the money market, and the difficulty which would probably have been experienced in selling the treasury stock. There is nothing to show that conditions are any better at the present time, or that the appellees now are, or ever will be, able to sell the treasury stock. While the appellant was to part with 20 per cent. of his stock, which in a sense may be said to represent one-fifth of his mining property, he was to receive, as part of the consideration therefor, the benefit of the proceeds of another 20 per cent. of the stock to be sold by the services of the appellees and applied to the development of the mines. Specific performance is not a matter of right, but rests in the sound judicial discretion of the court, and before it may be awarded, it must appear that the complainant on his part has complied with the substantial conditions of the contract, under the rule that he who seeks equity must himself do equity. Washington Irr. Co. v. Krutz, 119 Fed. 279, 56 C. C. A. 1; Cronen v. Moore, 210 Fed. 239, 127 C. C. A. 57.

[6] 3. Even if the contract were specific and certain, we are of the opinion that within well-settled principles which govern specific performance, equity should withhold the specific relief here sought, on the ground that the complaint calls for the performance of acts which require the participation of others not parties to the contract or to the suit, such as the execution of articles of incorporation, the election of a board of directors, the adoption of resolutions, and other details of corporate action. A court of equity will not, for instance, compel a corporation to buy in its stock in order to carry out an agreement whereby it has promised to pay for a lease of lands in stock. Smith v. Flathead River Coal Co., 64 Wash. 642, 117 Pac. 475. Nor will it require the specific performance of an agreement to enter into a copartnership. Pomeroy Specific Performance of Contracts, § 290; Hyer v. Richmond Traction Co., 168 U. S. 471, 18 Sup. Ct. 114, 42 L. Ed. 547. Nor will it compel a defendant to buy real estate in order to carry out his contract to convey the same. Laubengayer v. Rohde, 167 Mich. 605, 133 N. W. 535.

[7] 4. While this is a suit to compel the creation and organization of a corporation, and the transfer of a portion of its stock after issuance, it is, so far as the appellee's interest therein is concerned, a suit to compel the transfer of stock. It is the rule that a decree for the specific performance of a contract to convey shares of stock in a corporation will be denied unless the facts pleaded and shown present an unusual and exceptional situation in which damages will be inadequate. Bernier v. Griscom-Spencer Co. (C. C.) 169 Fed. 889. In Bacon v. Grosse, 165 Cal. 481, 132 Pac. 1027, Judge Sloss, for the Supreme Court of California said:

"Undoubtedly it is the general rule that equity will not compel the delivery of specific personal property wrongfully withheld, nor enforce the specific performance of a contract to sell chattels, unless it is shown that money damages for the breach of the obligation would not afford adequate relief. Senter v. Davis, 38 Cal. 450; Harle v. Haggin, 131 App. Div. 742, 116 N. Y. Supp. 51; Civ. Code, § 3387. This rule has often been applied to actions involving corporate stock, the rule declared being that the plaintiff will be denied specific relief in the absence of proof that he would derive some peculiar advantage from the possession of the particular stock which he seeks to retain."

The decree is reversed, and the cause is remanded, with instructions to dismiss the same.