### WICHITA WATER CO. v. CITY OF WICHITA.

### CITY OF WICHITA v. WICHITA WATER CO.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1922.)

Nos. 5903, 5911.

1. **Specific performance ☞28(I), 31—Contract must be complete and certain.**

A contract, to be specifically enforced, must be complete, certain in its terms, free from doubt or ambiguity, and declare the precise act to be done.

2. **Municipal corporations ☞169—Statements of city clerk, contrary to resolution of city commissioners, not binding.**

Statements of a city clerk in a letter contrary to a resolution of the commissioners of the city, a copy of which was inclosed, were of no effect, and did not bind the city.

3. **Specific performance ☞14—No enforcement, if consent of third party required.**

There can be no specific performance of a contract, if the assent of another not a party to the contract is required.

4. **Specific performance ☞80—Agreement to arbitrate not enforced.**

As a general rule an agreement to submit a matter to arbitration, or valuation, or an agreement an essential part of which is that a matter shall be submitted to arbitration, or valuation, will not be specifically enforced, nor will the court itself fix the price, or substitute other valuers; but, where the agreement to submit to arbitrators is a subordinate part of the contract, and the defendant refuses to submit the matter, the court itself may make the value by reference to a master or otherwise.

5. **Specific performance ☞80—Arbitration clause in water franchise unessential as regards enforcement of contract to purchase.**

Arbitration clause in a franchise granted by a city to a water company, concerning the fixing of value of properties on election by the city to purchase, held an unessential part of the franchise contract, so far as the enforcement of a contract to purchase is concerned.

6. **Specific performance ☞31—City held not to have elected to purchase water system under rights in franchise of water company, so as to constitute an enforceable contract.**

Where water company franchise gave the city the right to purchase at the end of 20 years, a resolution at such time providing for appointment of appraisers, etc., to value the system, to the end "that the proposition may be submitted to the vote of the citizens of said city for their acceptance or their rejection," and correspondence held not a contract which the water company could have specifically enforced, even though the city had no right to have a valuation fixed prior to purchase.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by the Wichita Water Company against the City of Wichita, to have the amount which the city should pay for a water

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

system ascertained. From a decree (271 Fed. 973), both parties appeal. Reversed on city's appeal, and appeal of water company dismissed.

W. R. Voorhis, of New York City, and R. R. Vermilion, of Wichita, Kan. (Earle W. Evans, Joseph G. Carey, W. F. Lilleston, David Smyth, and J. W. Smyth, all of Wichita, Kan., Henry H. Pierce and Sullivan & Cromwell, all of New York City, on the brief), for Wichita Water Co.

Robert C. Foulston, of Wichita, Kan. (George Siefkin, of Wichita, Kan., on the brief), for city of Wichita.

Before CARLAND and STONE, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. [1] The Wichita Water Company, hereafter called water company, alleging that the city of Wichita, hereafter called city, a municipal corporation of the state of Kansas, had purchased, but refused to pay for, a system of waterworks located in said city and formerly belonging to the water company, commenced this action in the court below against the city to have the amount which the city should pay for said system of waterworks ascertained by a master and its payment compelled. A motion to dismiss the complaint was made by the city and overruled. As the same questions were subsequently raised by a motion for judgment on the pleadings made by the water company, we do not stop to consider the motion to dismiss. The city answered, and on motion of the water company, judgment was rendered in its favor on the pleadings. The final decree provided that the city should pay the water company for its system of waterworks the sum of $1,999,660.77, in the manner provided for in the decree. Both parties appealed; the water company claiming that it was not allowed sufficient compensation, and the city claiming that it had never purchased the waterworks system, and, if it had, error intervened to its prejudice in fixing the amount of the compensation it should pay therefor.

The first question for consideration is: Did the city agree to purchase the waterworks system, or, in other words, was there a contract between the parties which the trial court in the exercise of a sound judicial discretion might enforce? This contract must have been complete, certain in its terms, free from doubt or ambiguity, and have declared the precise act to be done. In Colson v. Thompson, 2 Wheat. 341, 4 L. Ed. 256, Justice Washington, speaking for the Supreme Court, said:

"The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it."

In Hunt v. Rousmaniere, 1 Pet. 14, 7 L. Ed. 33, the same Justice said:

"Equity may compel parties to perform their agreements, when fairly entered into, according to their terms; but it has no power to make agreements for parties, and then compel them to execute the same. The former is a

legitimate branch of its jurisdiction, and in its exercise is highly beneficial to society. The latter is without its authority, and the exercise of it would be not only an usurpation of power, but would be highly mischievous in its consequences."

In Carr v. Duval, 14 Pet. 83, 10 L. Ed. 364, Justice Catron, speaking for the Supreme Court said:

"If it be doubtful whether an agreement has been concluded, or is a mere negotiation, chancery will not decree a specific performance; the principle is a sound one, and especially applicable in a case like this, where the party attempting to enforce the contract has done nothing upon it. Huddlestone v. Briscoe, 11 Ves. 522."

In Dalzell v. Dueber Manufacturing Co., 149 U. S. 325, 13 Sup. Ct. 890, 37 L. Ed. 754, Justice Gray, speaking for the Supreme Court, said:

"From the time of Lord Hardwicke it has been the established rule that a court of chancery will not decree specific performance, unless the agreement is 'certain, fair, and just in all its parts.' Buxton v. Lister, 3 Atk. 383, 385; Underwood v. Hitchcox, 1 Ves. Sen. 279; Franks v. Martin, 1 Eden, 309, 323. * * * So this court has said that chancery will not decree specific performance, 'if it be doubtful whether an agreement has been concluded, or is a mere negotiation,' nor 'unless the proof is clear and satisfactory, both as to the existence of the agreement and as to its terms.' Carr v. Duval, 14 Pet. 79, 83; Nickerson v. Nickerson, 127 U. S. 668, 676; Hennessy v. Woolworth, 128 U. S. 438, 442."

With the foregoing principles of law in mind, let us consider the pleadings with a view of determining whether there was a contract on the part of the city to purchase the waterworks system. It appears from the complaint that in September, 1882, the city enacted an ordinance, numbered 266, whereby it granted to I. A. Jones, his associates, successors, and assigns, for the term of 40 years, a right to construct, operate, and maintain a system of waterworks in said city. Jones assigned his contract rights under said ordinance to the Wichita Water Company, a Kansas corporation, which changed its name to the City of Wichita Water Company, and the latter transferred its rights to the Water Company, a Delaware corporation. Sections 9 and 10 of the ordinance above mentioned provided as follows:

"Sec. 9. That the city shall have the right to purchase the works ten years after completion, and failing to purchase at the expiration of ten years, then every five years thereafter at appraised valuation of three disinterested parties, said appraisers to be selected in the following manner, namely: The city to select one; the said Jones or assigns to select one; and the two thus chosen to select a third. When these three shall be chosen, they shall be duly sworn, and they shall proceed to declare the valuation of the franchise works and choses of action, by examining not exceeding three experts on behalf of each party, and when they, or a majority of them, have declared the valuation in writing, the city shall pay the same within three months thereafter; and in case there should be no hydrant rental existing at the time of purchase, then the number of hydrants erected shall be taken into consideration at the rates provided for in sections 5 and 6, and the city in this purchase shall assume all the obligations of the water company, the lawful quittance for which shall be secured by said Jones, or assigns, as a part payment of the declared valuation, and the said Jones, or assigns, shall accept obligations of the city of Wichita, legally issued, at legal rates of interest, not exceeding twenty annual payments, for the balance due upon the declared valuation after deducting the obligations of the water company.

"Sec. 10. That the city shall give six months' notice in writing of their intentions to purchase."

On November 9, 1917, the mayor and commissioners of the city passed the following resolution:

"Whereas, by the terms of section 9 of Ordinance No. 266, being an ordinance entitled 'An ordinance providing for a system of waterworks for the city of Wichita, for domestic, sanitary and other purposes,' it is provided that the city of Wichita, at certain periods and times shall have the right to purchase the system of waterworks constructed under said ordinance;

"And whereas, by the provisions of said section 9 a manner for the valuation of said waterworks is provided;

"And whereas, the city of Wichita desires to open negotiations for the purpose of appraising and fixing the value of the said waterworks, to the end that the proposition may be submitted to the vote of the citizens of said city for their acceptance or their rejection;

"And whereas, it is deemed necessary to first determine the valuation of said plant now operated in the city of Wichita by the Wichita Water Company as the assignee of I. A. Jones, his associates, successors, and assigns: Therefore—

"Be it resolved by the board of commissioners of the city of Wichita, Kansas, that the city manager be and hereby is authorized, directed, and instructed to open negotiations with the Wichita Water Company, to the end that the valuation of the said plant and properties may be fixed as provided by the terms of section 9 of the Ordinance No. 266, and that after said valuation shall have been fixed that, if the same is deemed expedient, a proposition to issue bonds for the purchase of said waterworks may be then submitted to the citizens of said city.

"Adopted at Wichita, Kansas, Nov. 7, 1917.          "L. W. Clapp, Mayor.
"Attest:  H. D. Lester, City Clerk."

Prior to the passage of said resolution, the city had adopted in the manner provided by law a plan of government provided by chapter 86, Session Laws of Kansas for the year 1917, commonly known as the city manager plan, and at the time of the passage of said resolution the city was governed by five commissioners, and one L. R. Ash was city manager, and possessed the powers conferred on city managers by said chapter 86. On November 14, 1917, H. D. Lester, city clerk, under the direction of said L. R. Ash, wrote, signed, and delivered to E. C. Elliott, superintendent of the water company, the following letter:

"November 14, 1917.

"Mr. E. C. Elliott, Supt. Wichita Water Company, Wichita, Kansas—Dear Sir: Mr. L. R. Ash, city manager, has directed that I send to you a certified copy of resolution adopted by the board of commissioners, at their meeting held November 7, 1917, providing for appraising and determining the value of the waterworks, with a view of purchasing the same. Inclosed herewith is certified copy of said resolution. Please consider this your notice of action of commissioners, and be governed thereby, and proceed with any steps that may be necessary to be taken by your company.

"Yours truly,                                   H. D. Lester, City Clerk."

A copy of the resolution of November 9, 1917, was inclosed with said letter. On November 27, 1917, the water company answered the Lester letter of November 14, 1917, as follows:

"35—2966.

"November 27, 1917.

"To the Honorable Mayor and Commissioners of the City of Wichita, Kansas—Gentlemen:

"We beg to acknowledge receipt of a letter from the city clerk, under date of the 14th inst., inclosing a certified copy of a resolution of your honorable body under date of November 7, 1917, from which it would appear that it

is the desire of the city of Wichita to acquire title of the waterworks system under section 9 of Ordinance No. 266.

"That section provides that the city shall have the right to purchase the works 'at the appraised valuation of three disinterested parties, said appraisers to be selected in the following manner, namely: The city is to select one; the said Jones, or assigns, to select one; and the two thus chosen to select a third.'

"While section 10 of the ordinance provides for a six months' notice of the intention to purchase, we are not disposed to cause any delay, and if the city now desires to purchase the works as provided in section 9 of the ordinance, you may proceed to appoint your appraiser for the city, and upon being advised of your appointment the company will appoint its appraiser, and the appraisers so selected can be placed in communication and co-operation in the appointment of the third man.

"Yours truly,                    The Wichita Water Company,
                                 "By E. C. Elliott, Vice Pres."

December 13, 1917, Lester wrote Elliott as follows:

"December 13, 1917.

"Mr. E. C. Elliott, Vice President Wichita Water Company, Wichita, Kansas—Dear Sir: Your letter of November 27, 1917, was read to the board of commissioners on December 11, 1917:

"Communication read in full. 'Powell moved that the above communication be received, filed, and copied in full in minutes of commissioners' proceedings, and the board of commissioners to proceed, under franchise ordinance, to appoint the appraiser to represent the city. Motion carried.'

"This is notice to the water company of action taken by the board of city commissioners, Wichita, Kansas, relative to appointing appraiser to assist in making valuation of the waterworks system in Wichita.

"Yours very truly,                    H. D. Lester, City Clerk."

December 27, 1917, the board of directors of the water company adopted the following resolution:

"Whereas, notice has been received from the city clerk of the city of Wichita, Kansas, dated December 13, 1917, of the resolution adopted by the board of commissioners December 11, 1917, empowering the board of commissioners to proceed under franchise ordinance to appoint the appraiser to represent the city and notify the water company of such action in accordance with section 9 of Ordinance No. 266 of the city of Wichita, approved September 19, 1882:

"Therefore be it resolved by the board of directors of the Wichita Water Company that said notice be accepted, and that Mr. William Wheeler, of 14 Beacon street, Boston, Mass., be and is hereby appointed a member of the board of appraisers to value the property of the Wichita Water Company in accordance with section 9, of Ordinance No. 266 of the city of Wichita, approved September 19, 1882, herein referred to; and

"Be it further resolved that the respective notices be given the board of commissioners of the city of Wichita and Mr. William Wheeler, of Boston, Massachusetts, of such appointment."

On December 31, 1917, the water company wrote the following letter to the city:

"Wichita, Kansas, Dec. 31, 1917.

"The Honorable the Board of Commissioners of the City of Wichita, Kansas—Gentlemen:

"The board of directors of the Wichita Water Company, at a meeting held December 27, 1917, adopted the following resolution:

"'Whereas, notice has been received from the city clerk of the city of Wichita, Kansas, dated December 13, 1917, of the resolution adopted by the board of commissioners December 11, 1917, empowering the board of commissioners to proceed under franchise ordinance to appoint the appraiser to represent the city and notify the water company of such action, in accordance

with section 9 of Ordinance No. 266 of the city of Wichita, approved September 19. 1882:

" 'Therefore be it resolved by the board of directors of the Wichita Water Company that said notice be accepted, and that Mr. William Wheeler, of 14 Beacon street, Boston, Mass., be and is hereby appointed a member of the board of appraisers to value the property of the Wichita Water Company, in accordance with section 9 of Ordinance No. 266 of the city of Wichita, approved September 19, 1882, referred to; and

" 'Be it further resolved that respective notices be given the board of commissioners of the city of Wichita and Mr. William Wheeler, of Boston Massachusetts, of such appointment.'

"We respectfully request that we be advised by the city of the name of its appraiser, appointed under its resolution of December 11, 1917, so that notice may be given Mr. Wheeler, in order that the two appraisers so selected may arrange a conference, by telegraph or in person, to select the third member.

"Regarding the expense of the appraisement, it is possible that the framers of section 9, Ordinance No. 266, contemplated that the entire cost of same should be borne by the city; but, in view of it being silent as to such condition, we have to suggest that, if the city agrees, and so indicates, the plan outlined below for apportioning the expenses can be followed:

"The city and the water company to bear jointly, share and share alike, the cost, including fees and all expenses of the third appraiser, but that the cost for fees and expenses of the two other members of the board of appraisers to be paid by their respective nominators; also that the cost and expense of the introduction of evidence shall be paid by the city or the water company, whichever on whose behalf and by whom such evidence is introduced.

"Yours respectfully,          The Wichita Water Co., by Vice Pres."

On January 2, 1918, the commissioners of the city took action on the letter of the water company of December 31, 1917, as follows:

"Wichita, Kansas, Jan. 2, 1918.

"Commission met in regular adjourned session, with President Power in the chair. Crawford, Hadley, Jackman, present; Mayor Clapp absent.

"The following among other proceedings were had:

"Communication from Wichita Water Company, wherein they state that they have appointed Mr. William Wheeler, of Boston, Mass., as appraiser to represent them in appraising property of Wichita Water Company, and stating method of handling expenses of appraising, read. Crawford moved that the communication be received and filed, and the city manager authorized to acknowledge receipt of same, and to state that the city will name its representative at an early date. Motion carried."

On January 4, 1918, L. R. Ash, city manager, wrote to Elliott as follows:

"City of Wichita, Kansas, January 4, 1918.

35—2966.

"Mr. E. C. Elliott, Vice Pres. Wichita Water Co., Wichita, Kansas—Dear Sir: This will acknowledge receipt of yours of December 31st to the board of commissioners relative to the appointment of appraisers for the valuation of the property of the Wichita Water Company, and in reply will say that the commission has instructed me to say to you that the appointment of the city's appraiser will be accomplished within a short time, when it is hoped that the valuation of the property may proceed. In due time the commission will desire to go into the matter further with you as regards the details for making the appraisal.

"Very truly yours,          L. R. Ash, City Manager.
"LRA/S"

On February 7, 1918, Ash again wrote Elliott as follows:

"February 7, 1918.

"Wichita Water Company, Mr. E. C. Elliott, Supt., Wichita, Kansas—Gentlemen: The city has been somewhat delayed in its effort to appoint a

satisfactory man for the work of appraising the property of your company, looking to the purchase of the plant by the city in accordance with the franchise provision; but I hope that you will proceed with the preparation of the inventory of the property, in order that we may not be unduly delayed in getting results. As quickly as we can do so, our engineer will be appointed, and no doubt there is a great deal of work that can be done in the preparation of the inventory that will not need, at this time, the co-operation of the city's representative. I hope, therefore, that you will take steps to go forward with the work, having my assurance that we will not delay the appointment of the city's appraiser any longer than circumstances will necessitate.

"Very truly yours,                                    L. R. Ash, City Manager.
"LRA/S"

[2] The complaint also alleged that the water company had been at all times ready and willing to proceed with the appraisal of its waterworks system as provided in section 9 of Ordinance No. 266, and to convey the same to the city by all proper instruments and conveyances, but that the city had refused to further proceed with the appraisal of said waterworks system, and had attempted to repudiate the action already taken by it in the premises. The answer of the city was composed largely of conclusions of law or allegations of fact that would not have been admissible to vary the terms of the written instruments hereinbefore set forth. Coming now to a consideration of the different written instruments which constituted the contract to purchase the waterworks system on the part of the city, if any such contract existed, we turn to the resolution of November 9, 1917, not only because it was the first action on the part of the city, but also because it is to that action that all subsequent proceedings referred. The whereas clauses of the resolution may be properly referred to as giving the reasons which induced the city to pass the resolution. The first whereas clause referred to section 9 of Ordinance No. 266 as giving the city the right to purchase the system of waterworks. The second refers to the provisions of section 9 which provides the manner of the valuation of the waterworks system. The third recites that the city desires to open negotiations for the purpose of appraising and fixing the value of the waterworks, to the end *that the proposition may be submitted to the vote of the citizens of said city for their acceptance or their rejection.* The fourth recites that it is deemed necessary to *first determine the valuation of said plant now operating in the city of Wichita;* then the resolution itself directs and instructs the city manager *to open negotiations* with the water company, to the end that the valuation of the waterworks may be fixed as provided by the terms of section 9 of Ordinance No. 266, and that after said valuation shall have been fixed *that if the same is deemed expedient a proposition to issue bonds for the purchase of said waterworks may be then submitted to the citizens of said city.* It thus appears from the whereas clauses and from the resolution itself that the mayor and commissioners had in view the ascertainment of the value of the waterworks system, so that the proposition as to whether the city should purchase the waterworks system and issue bonds in payment thereof might be submitted to the vote of the citizens of the city for their acceptance or rejection. It nowhere appears in the resolution that the mayor and commissioners intended

to purchase the waterworks system without the proposition to purchase and to issue bonds was first submitted to the citizens of the city. It is no doubt true that the city was not entitled to have the value of the waterworks system determined in advance of the purchase, but this fact cannot prevent the court from determining what the intent of the mayor and commissioners was in passing the resolution of November 9, 1917. They cannot be held to have intended to purchase the waterworks system merely because they proceeded under a mistaken idea of their rights in the premises. In other words, if the resolution as a whole shows no intention of purchasing the waterworks system until the proposition had been submitted to a vote of the citizens of the city, the resolution cannot be held to be a declaration of intention to purchase because the mayor and commissioners were proceeding on a wrong theory. What they did is the same, whether right or wrong.

Proceeding now on the theory that all the mayor and commissioners sought to do by the resolution of November 9, was to obtain a valuation which might be submitted to the citizens of the city of Wichita for the purpose mentioned, we come to the other written documents bearing upon the question of purchase. The first is the letter of the city clerk of November 14, 1917. This letter inclosed a copy of the resolution of November 9, and anything the clerk may have said which was contrary to the resolution could have no effect and could not mislead the water company. The same is true as to the city manager. The next instrument in order of time is the letter of the water company to the mayor and commissioners, dated November 27. This letter acknowledges the receipt of the letter from the clerk of November 14, inclosing a certified copy of the resolution of November 9. The water company said in the letter that it would appear from the resolution that it was the desire of the citizens of Wichita to acquire title to the waterworks system under section 9 of Ordinance No. 266, but it appears also from the letter of the water company that it was not quite sure about the desire of the city, for in the closing part of its letter it says, "and if the city now desires to purchase the works as provided under section 9 of the ordinance," then appraisers may be appointed. This letter simply shows that the water company was in doubt as to whether the city desired to purchase the waterworks or not. The next action of the city was on December 11, 1917, when on motion the communication of the water company was placed upon the minutes of the commissioners' proceedings, and it was resolved that the commissioners proceed under franchise ordinance to appoint an appraiser to represent the city. This action of the mayor and commissioners was entirely consistent with the resolution of November 9, and did not alter the situation in any respect. This action of the mayor and commissioners was communicated by the city clerk to the water company on December 13, 1917. The clerk says in his letter that it was notice to the water company that action had been taken by the board of city commissioners relative to appointing appraisers to assist in making the valuation of the waterworks system. There never was any notice in terms given by the mayor and commissioners that they intended to purchase the waterworks system. On December 27, 1917, the water company appointed

an appraiser to value the property of the water company and notice of this appointment was given to the city. On receipt of the notice of the appointment of an appraiser by the water company the commissioners of the city in regular session directed the city manager to acknowledge receipt of said notice and to state that the city would name its representative at an early date. The city manager complied with the instructions of the commissioners. Again on February 7, 1918, the city manager wrote the water company that the city had been somewhat delayed in finding a satisfactory man for the work of appraising the property of the water company, but hoped that the water company would proceed, so there would be no undue delay in getting results, and that the city would appoint an appraiser as soon as possible.

[3] It thus will be seen that all the acts of the city and the correspondence between it and the water company subsequent to the resolution of November 9 simply related to the matter of the valuation of the waterworks system pursuant to said resolution, and it clearly appears from the resolution itself that the mayor and commissioners had no intention of purchasing the waterworks system unless the valuation was known and the proposition submitted to the citizens of Wichita. There can be no specific performance, if the assent of another not a party to the contract is required. Ellis v. Treat, 236 Fed. 120, 149 C. C. A. 330. Right or wrong in their legal attitude, that is all they intended to do, and all they did do. In addition to the compelling force of the authorities hereinbefore referred to, there is another feature of this case which required the court to be sure there was a contract on the part of the city, because in the way the alleged contract has been enforced the city is compelled to pay the valuation fixed by the court, instead of by the three appraisers. As a general rule, an agreement to submit a matter to arbitration or valuation, or an agreement, an essential part of which is that a matter shall be submitted to arbitration, or valuation as for a sale or lease at a price or rent to be fixed by valuers, will not, be specifically enforced, nor will the court itself fix the price or substitute other valuers, since that would be to make a new contract for the parties. Where, however, the agreement to submit to valuers or arbitrators is a subordinate or unessential part of the contract, and the defendant refuses to submit the matter to arbitrators or valuers, the court itself in such a case may make the value by reference to a master or otherwise.

[4-6] We recognize and follow the decision of this court in Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 76 C. C. A. 516, 8 Ann. Cas. 660, wherein it is held that the arbitration clause in a franchise granted by a city to a water company, such as the one in question in this case, is an unessential part of the franchise contract, and that, so far as the enforcement of a contract to purchase is concerned, it may be enforced in the manner followed by the court below. In the case mentioned, however, the franchise of the water company was to expire in 20 years. Notice of intention on the part of the city to purchase the waterworks system was to be given one year in advance. The opinion in the case says:

"One year before the expiration of the term of the contract, the city gave notice to the complainant that it would 'purchase said waterworks and appurtenances at the time and in accordance with the provisions of said proposition and ordinances.'"

Of course by such a notice there could not be any question but that the city of Aspen had elected to purchase the waterworks system, but no such language is found in the record in the present case.

The case of Slocum v. City of North Platte, 192 Fed. 252, 112 C. C. A. 510, is another case decided by this court and relied upon by counsel for the water company. So far as the question of contract is concerned, however, it has very little relevancy. In the Slocum Case the city of North Platte appointed its appraiser. The water company also appointed an appraiser. The two appraisers so appointed selected a third, and the three so selected duly appraised the water plant at $85,021. This court directed the entry of a decree against the city for the amount of the award. Prior to the appointment of the appraisers, and in January, 1905, the electors of North Platte, at an election duly had for that purpose, voted by the requisite majority an issue of $60,000 of bonds of the city to raise money to "build, purchase or otherwise acquire a system of waterworks to be owned and operated by the city." The bonds so voted were subsequently signed by the proper officials, duly registered as required by law, and were ready for negotiation whenever the city was able to negotiate them. At the time of the election there was no other waterworks system in the city that it could purchase, except the one belonging to the plaintiff. After such election the city rejected the price at which the water company offered to sell its plant, and proceeded in the way provided by the franchise ordinance to have appraisers appointed, who appraised the value of the waterworks system as above stated. There was no declaration by the city that the object of the valuation by the appraisers was for any other purpose than purchasing the waterworks system. The case on its facts is not similar to the one before us.

We have examined the cases cited by counsel for the water company wherein contracts similar to the one alleged to have existed in this case have been enforced; but this case turns entirely upon the question as to whether there was a contract, and we are of the opinion that all the acts of the city officials in the premises were for the sole purpose of having a value placed upon the waterworks system, so that the proposition of whether the city should purchase said system at the value determined upon might be submitted to the citizens of the city, and that the mayor and commissioners never intended on their own authority to purchase the same. Being of such opinion, it necessarily results that there was no contract to purchase which could be enforced.

The decree on the appeal of the city, No. 5911, is reversed, with instructions to the trial court to dismiss the action, with costs. This necessarily results in a dismissal of the appeal of the water company, No. 5903.